# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201600111

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## MYKAL L. EVANS
Lance Corporal (E-3), U.S. Marine Corps
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding General, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, CA.
Staff Judge Advocate's Recommendation: Colonel Daren K. Margolin, USMC.
For Appellant: Major Benjamin A. Robles, USMC; Lieutenant Commander Jeremy Wall, JAGC, USN.
For Appellee: Lieutenant Megan Marinos, JAGC, USN; Lieutenant Robert J. Miller, JAGC, USN.

————————————

Decided 21 September 2017

————————————

Before GLASER-ALLEN, MARKS, and WOODARD, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2**

————————————

GLASER-ALLEN, Chief Judge:

A general court-martial composed of members with enlisted representation convicted the appellant, contrary to his plea, of abusive sexual contact in violation of Article 120(d), Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 920(d). The appellant was sentenced to six months' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises three assignments of error (AOEs), one of which has been resolved by our superior court.[1] The remaining two AOEs are: (1) the military judge erred in denying expert assistance to determine the appellant's susceptibility to rendering a false confession; and (2) the military judge committed plain error by instructing the members not to consider evidence of good military character when deliberating on the abusive sexual contact charge.[2] After carefully considering the pleadings and the record of trial, we find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and victim (Lance Corporal (LCpl) CLW) were both members of Marine Air Support Squadron 3 aboard Camp Pendleton, California. On 28 June 2014, the appellant, LCpl CLW, and other members of their unit attended an off-base party. Everyone except for the designated driver (DC) consumed alcohol at the party.

After approximately two hours, LCpl CLW said she was not feeling well and went to sleep on the rear bench seat of the van the group took to the party. Several hours later, DC drove the van back to his home and went inside to sleep. He left the rest of the group, including the appellant and LCpl CLW, sleeping in the van.

LCpl CLW later awoke with her clothing partially removed, the appellant on top of her, his mouth on her breast, and his hand in her underwear. She hit the appellant on the head to make him stop; he apologized and moved to the floor of the van. LCpl CLW immediately exited the van, knocked on DC's

---

[1] "THE MILITARY JUDGE IS REQUIRED TO ACCURATELY INSTRUCT THE MEMBERS ON THE LAW. HERE, THE MILITARY JUDGE INSTRUCTED THE MEMBERS 'IF, BASED ON YOUR CONSIDERATION OF THE EVIDENCE, YOU ARE FIRMLY CONVINCED THAT THE ACCUSED IS GUILTY OF THE CRIME CHARGED, YOU MUST FIND HIM GUILTY.' THIS WAS PLAIN ERROR" Appellant's Brief of 21 Sep 2016 at 15-16. The Court of Appeals for the Armed Forces (C.A.A.F.) found no error in the use of the same challenged instruction in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), and in accordance with that holding, we summarily reject the appellant's supplemental AOE here. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992); *see also United States v. Rendon*, 75 M.J. 908, 916-17 (N-M. Ct. Crim. App. 2016), *rev. denied.* 76 M.J. 128 (C.A.A.F. 2017).

[2] We have renumbered the appellant's AOEs. AOE II is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

window, and asked if she could come inside. He noticed she was upset and gave her a place to sleep in the living room. Later that morning, LCpl CLW texted another Marine in the group indicating she wanted the appellant to leave because he had assaulted her the night before.

During the resulting Naval Criminal Investigative Service (NCIS) investigation, agents questioned the appellant. The NCIS interrogation lasted approximately three hours. The questioning portion of the interrogation lasted approximately one hour and twenty minutes, the remainder of the time consisted of the appellant typing his confession. The interrogation occurred during normal working hours, and the NCIS agents did not raise their voices, threaten physical violence, or withhold food, water, or other necessities.

At trial, the defense called three witnesses, who all testified to the appellant's good military character. The military judge instructed the members, without objection, that the good military character defense did not apply to the abusive sexual contact charge, but only to the lesser included offense (LIO) of assault consummated by a battery.

## II. DISCUSSION

### A. Denial of expert assistance

On 8 October 2015, the appellant filed a motion to compel the assistance of a specific expert consultant in the field of forensic psychology to advise on "false and coerced confessions . . . and sociology of suggestibility of interrogation and interviewing procedures . . . to influence the accuracy of suspects' admissions."[3] The military judge denied the motion.[4]

On 2 November 2015, the defense filed a second motion requesting reconsideration of the military judge's prior denial of the false confession expert consultant. Trial defense counsel (TDC) claimed the military judge erred in some of his findings of fact and misunderstood the defense team's access to their command's highly qualified expert (HQE), and the help the HQE could provide to prepare them for trial. On 4 November 2015, the military judge heard the reconsideration motion and again denied the expert consultant.

Immediately following this ruling on the expert consultant, TDC verbally requested the same expert be produced as an expert witness, which was denied by the military judge via written ruling on 6 November 2015.[5]

---

[3] Appellate Exhibit (AE) VI at 1; Record at 45-48.

[4] Record at 62-65.

[5] *Id.* at 93; AE XXII.

Although the military judge denied the expert witness as unnecessary, he did allow the defense "more leeway in the *voir dire* process to ask whether members believe that people can't give false confessions without physical coercion or any sort of mental infirmity."[6] TDC were also permitted to extensively cross-examine the NCIS agents on their interrogation practices, though ultimately chose not to raise the issue of suggestive interviewing techniques or voluntariness of the confession at trial.

The military judge denied the defense motions with thorough analysis on the record, later augmented by a written ruling.[7] He concluded that the appellant failed to show why false confession expert assistance was needed or what that assistance would accomplish, as there was scant evidence that the appellant's confession to NCIS was false or coerced, that the appellant suffered "from some abnormal emotional or psychological problem," or that the appellant had "a submissive personality so weak or disoriented as to make [him] susceptible to make false or incriminatory statements."[8]

He further found that the NCIS agents videotaped the entire interrogation, did not use unlawful coercive techniques, and did not continue the interrogation for an unreasonable amount of time. He also noted that the appellant provided details the NCIS agents did not have and failed to disavow his statement after swearing to its truth.

The military judge then concluded:

> The Court is left with [a] simple and initial denial of having memory of the events to a friend in a video of Lance Corporal Evans denying guilt followed up by him admitting to the elements of the charged offense and swearing that this is the truth that closely matches the alleged victim's version of events. The Court is not aware of any case law that holds that this amount of evidence entitles the defense to a false confession expert as a matter of military due process.[9]

The defense is entitled to an expert's assistance upon demonstration of necessity and a showing that "'denial of expert assistance would result in a fundamentally unfair trial.'" *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F. 2005) (quoting *United States v. Gunkle*, 55 M.J. 26, 31 (C.A.A.F. 2001)). The appellant must prevail on both prongs by a "reasonable

---

[6] Record at 137; AE XXII at 11.

[7] Record at 87-92; AE XXII.

[8] Record at 88; AE XXII at 10-11.

[9] Record at 90; AE XXII.

probability." *Id. See also* RULE FOR COURTS-MARTIAL (R.C.M.) 703 and MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 702, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

The "necessity" standard has a three-part test under which the appellant "must show (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel were unable to gather and present the evidence that the expert assistance would be able to develop." *Bresnahan*, 62 M.J. at 143 (footnote omitted). To demonstrate necessity "an accused 'must demonstrate something more than a mere possibility of assistance from a requested expert[.]'" *Gunkle*, 55 M.J. at 31 (citations and internal quotation marks omitted).

We review a military judge's denial of expert assistance for abuse of discretion. *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010).[10] Here, we concur with the military judge's findings of fact and conclusions of law. The defense failed to demonstrate both the necessity of the requested expert assistance and that the absence of such assistance would result in a fundamentally unfair trial.[11] Further, the defense failed to demonstrate that the expert witness's testimony would assist the trier of fact to understand the evidence or to understand a fact at issue. As a result, we find that the military judge did not abuse his discretion.

---

[10] "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F 2008) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

[11] We distinguish this case from *United States v. Dougherty*, No. 201300060, 2013 CCA LEXIS 1072 at *6, unpublished op. (N-M. Ct. Crim. App. 2013). While the cases initially appear similar because both deal with false confession experts, here—like in *Bresnahan*—the proposed expert was unable to provide a necessary link between the personal characteristics most commonly associated with false confessions and the appellant, resulting in the military judge's denial of both an expert consultant and expert witness. In *Dougherty*, the accused had previously retained an expert consultant who had examined him, performed psychological testing, provided a written report, and testified that the accused demonstrated several characteristics that made him "very suggestive under pressure." *Id.* at *13. However, on the morning of trial, the new military judge denied the same expert consultant as an expert witness due to a faulty MIL. R. EVID. 403 analysis.

**B. Good military character evidence**

We review instructional errors *de novo*. *United States v. Killion*, 75 M.J. 209, 214 (C.A.A.F. 2016). Absent objection at trial, we review for plain error. *United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995). "If instructional error is found [when] there are constitutional dimensions at play, [the appellant's] claims 'must be tested for prejudice under the standard of harmless beyond a reasonable doubt.'" *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (quoting *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)).

The appellant contends, for the first time on appeal, that the military judge erred by instructing the members that a good (or general) military character defense applied solely to the LIO of assault consummated by a battery under Article 128, UCMJ, and not the charged offense of abusive sexual contact under Article 120, UCMJ.

Before instructing the members on findings, the military judge asked, "[d]efense, do you request the lesser included offense of assault and battery be instructed upon?"[12] TDC replied in the negative. The military judge then explained, "[d]defense, if you request it not be instructed upon, I have to instruct the members to disregard all the testimony you just gave on good military character because it's only relevant to the lesser included offense of assault and battery."[13] TDC requested to consider their decision on the LIO during a recess.

When court resumed, TDC requested the instruction. The military judge agreed, and the parties discussed the good military character instruction in detail, where the military judge again explained that it was relevant only on the assault and battery offense. Specifically, the military judge instructed, without objection, "Good military character cannot be considered regarding the greater offense of abusive sexual contact."[14]

Because the appellant did not request another instruction or otherwise object to the instructions the military judge ultimately gave, this issue was forfeited, and we review for plain error. *United States v. Feliciano*, 76 M.J.

---

[12] Record at 420. At trial, counsel repeatedly referred to "good" military character, though the new MILITARY RULE OF EVIDENCE 404(a)(2)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) identifies such evidence as "general" military character.

[13] Record at 420.

[14] *Id*. at 452; AE XLVI at 6.

237, 239-40 (C.A.A.F. 2017);[15] *see also United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017) (holding that failure to request a required instruction or otherwise object to the final form of instructions constitutes forfeiture, and reviewing courts will test for plain error).[16]

"Under a plain error analysis, the accused has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *Davis*, 76 M.J. at 230 (quoting *United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014)). "[T]he failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

We recognize that our superior court has emphasized the importance of character evidence. *United States v. Gagan*, 43 M.J. 200, 202 (C.A.A.F. 1995) ("[t]he power of character evidence cannot be underestimated.") However, MIL. R. EVID. 404(a)(2)(A) has recently changed; the modified rule reflects presidential and congressional focus on military sexual offenses and their shared view that a "good soldier" defense is inappropriate in such cases.[17]

On 17 June 2015, the President signed Executive Order 13696, which implemented a congressionally-directed amendment to MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 404(a). Leaving intact the general rule that character evidence is inadmissible to prove that a person acted in conformity with a character or trait, the amendment modified the exception of MIL. R. EVID. 404(a)(2)(A) as follows:

---

[15] In *United States v. Gladue* the Court of Appeals for the Armed Forces clarified the meaning of the terms "waiver" and "forfeiture":

> Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.

*Feliciano*, 76 M.J. at 240 fn.2 (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citations and internal quotation marks omitted)).

[16] "R.C.M. 920(f) uses the word 'waiver,' but it is clearly referring to 'forfeiture.' Forfeiture is the passive abandonment of a right by neglecting to preserve an objection . . . ." *Davis*, 76 M.J. at 227 n.1.

[17] *See* Carl Levin and Howard P. "Buck" McKeon National Defense Authorization act for Fiscal Year 2015, Pub. L. No. 113-291 § 536, 128 Stat. 3368 (2014).

The accused may offer evidence of the accused's pertinent trait and, if the evidence is admitted, the prosecution may offer evidence to rebut it. *General military character is not a pertinent trait for the purposes of showing the probability of innocence of the accused for the following offenses under the UCMJ*:

*(i) Articles 120-123a*;

(ii) Articles 125-127;

(iii) Articles 129-132;

(iv) Any other offense in which evidence of general military character of the accused is not relevant to any element of an offense for which the accused has been charged; or

(v) An attempt or conspiracy to commit one of the above offenses.[18]

Here, the appellant failed to meet his burden under the first prong of the plain error test. We find the military judge correctly interpreted MIL. R. EVID. 404(a)(2)(A) and therefore did not err, let alone plainly err, by declining to instruct the members that a good military character defense applies to the offense of abusive sexual contact under Article 120, UCMJ.[19]

### III. CONCLUSION

The findings and the sentence as approved by the CA are affirmed.

Senior Judge MARKS and Judge WOODARD concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[18] (Emphasis added). *See also*, *United States v. Roberts*, 75 M.J. 696, 698 (N-M. Ct. Crim. App. 2016) (reviewing a writ petition on similar issue).

[19] *See also*, STEPHEN A. SALTZBURG, LEE D. SCHINASI, DAVID A. SCHLUETER & VICTOR M. HANSEN, MILITARY RULES OF EVIDENCE MANUAL, § 404.02[2][b] (8th ed. 2015).